**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID MILLER,<br><br>               Plaintiff,<br><br>        v.<br><br>M. BRADY, A. MANTZ, C. BONNER, D. QUINTERO, F. LARKIN, AND BOROUGH OF SEASIDE PARK,<br><br>               Defendants. | Case No. 3:20-cv-09420 (BRM) (LHG)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

      Before this Court is a Motion to Dismiss (ECF No. 13) filed by Defendants M. Brady, A. Mantz, C. Bonner, D. Quintero, F. Larkin, and Borough of Seaside Park (collectively, "Defendants") seeking to dismiss with prejudice *pro se* Plaintiff David Miller's ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes the motion. (ECF No. 14.) Pursuant to Federal Rule of Civil Procedure 78(b), this Court did not hear oral argument. For the reasons set forth herein and for good cause shown, Defendants' Motion to Dismiss (ECF No. 13) is **GRANTED**.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

In considering this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

This case has a long and tortured history. On July 9, 2014, Plaintiff initiated suit against four Borough of Seaside Park ("Seaside Park") police officers, M. Brady, A. Mantz, C. Bonner, and D. Quintero, as well as Chief of Police, F. Larkin, and Seaside Park, alleging violations of Plaintiff's First Amendment right to speech pursuant to 42 U.S.C. § 1983. (Case No. 3:14-cv-04310-PGS-TJB, ECF No. 1.) Following dismissal of the action, Plaintiff filed a renewed Complaint before this Court on May 14, 2020. (ECF No. 1.) Plaintiff sues Defendants in their official and individual capacities, and seeks punitive and compensatory damages. (*Id.* at 37–38.)

Specifically, this action stems from, in part, Plaintiff's display of a sign advertising his website alleging government corruption in Seaside Park. (*Id.* ¶¶ 31, 37.) The sign was "semi-permanently" affixed to his truck, and the truck was parked in front of his home "on the shoulder" of Route 35 in Seaside Park. (*Id.* ¶¶ 37–38.) In June 2010, Plaintiff received notice from Seaside Park officials that the display of the sign violated Seaside Park Municipal Code § 25–624E, which prohibited "[t]he placement of any sign on public property or within any public right-of-way . . . without approval by resolution of the governing body." (*Id.* ¶¶ 40–41.) Plaintiff continued to display the sign without permission and failed to appear in Seaside Park Municipal Court despite

---

[1] The Court refers the reader to Magistrate Judge Bongiovanni's January 27, 2017 Opinion and the Third Circuit Court of Appeals's February 11, 2016 Opinion for additional factual and procedural background. *See Miller v. Bonner*, Civ. A. No. 14-4310, 2017 WL 778718, at *1 (D.N.J. Jan. 27, 2017), *report and recommendation adopted sub nom. Miller v. Brady*, Civ. A. No. 14-4310, 2017 WL 776103 (D.N.J. Feb. 27, 2017); and *Miller v. Brady*, 639 F. App'x 827 (3d Cir. 2016).

multiple summonses issued regarding the sign attached to Plaintiff's truck. (*Id.* ¶¶ 42, 46–47.) A warrant was issued for his arrest for failure to appear. (*Id.* ¶ 48.)[2]

On January 23, 2012, at around 10:30 p.m., Defendant Brady arrested Plaintiff pursuant to the warrant. (*Id.* ¶ 50.) The matter was transferred to Monmouth Beach Municipal Court, which found Plaintiff guilty of the violation and imposed a fine. (*Id.* ¶¶ 51–52.) Further, Plaintiff was ordered not to display the sign on his truck without permission. (*Id.* ¶ 52.) Plaintiff "continued to display the sign" and received another notice of violation of § 25–624E. (*Id.* ¶¶ 54–55.) Plaintiff received "repeated summonses" and "refused to appear in the Seaside Park Municipal Court regarding the summonses." (*Id.* ¶¶ 55–56.)[3]

In a "notice dated 25 August 2012 . . . the Seaside Municipal Court informed Plaintiff that his driver's license was scheduled to be suspended due to his failure to appear to pay a fine for displaying the sign on his truck." (*Id.* ¶ 58.) As a result, on August 31, 2012, Plaintiff's driver's license was suspended. (*See id.* ¶ 59.) On or about September 1, 2012, at around 10:30 p.m., Defendants Brady and Mantz observed Plaintiff driving in Seaside Park and "claimed" Plaintiff failed to yield the right of way to a group of pedestrians crossing Route 35. (*Id.* ¶¶ 67–68.) The officers attempted to initiate a motor vehicle stop, but Plaintiff reversed his intended direction of travel and slowly returned to his home and awaited arrest. (*Id.* ¶ 59.) Plaintiff contends "Defendants Brady and Mantz were demonstrably lying in wait to arrest Plaintiff on or about 1 September 2012 at about 10:30 PM." (*Id.* ¶ 73.) The officers "accused Plaintiff on or about 1

---

[2] Also, at this time, Plaintiff sent a letter to the Seaside Park Municipal Court "that stated his recognition of the municipal['s] attempt to suppress free speech that was directed toward the exposure of local corruption." (*Id.* ¶ 45.)

[3] Plaintiff acknowledges he "received multiple summonses to appear in the Seaside Park Municipal Court regarding the complaint against him." (*Id.* ¶ 57.)

3

September 2012 of nearly killing or injuring members of three separate groups of pedestrians that included a female pushing a stroller." (*Id.* ¶ 74.) Plaintiff was subsequently charged and arrested with several motor vehicle violations. (*See id.* ¶¶ 73–74.)

On September 4, 2012, Plaintiff was arrested by Defendant Bonner for driving while his license was suspended. (*Id.* ¶ 79.) Plaintiff contends Defendant Bonner falsely reported Plaintiff became "enraged and flailed his arms" during the arrest, and falsely reported Plaintiff made "paranoiac" statements, including that Plaintiff "began quietly talking to himself." (*Id.* ¶¶ 83, 91–92.) Plaintiff was "transported in handcuffs on or about 4 September 2012 to [the] nearby Community Medical Center where he was held in a lock-down psychiatric unit pending a psychiatric evaluation." (*Id.* ¶ 93.) On September 5, 2012, Plaintiff was "released" from the "psychiatric lock-down unit" immediately after his psychiatric evaluation and was subsequently billed from the Community Medical Center "$7,600 regarding the unauthorized and forced psychiatric evaluation that was performed on or about 5 September 2012." (*Id.* ¶¶ 93–95.) Plaintiff alleges the September 4, 2012 "video recording shows that Plaintiff was absolutely calm after the alleged enragement / arm flailing that allegedly occurred." (*Id.* ¶ 87.)

On September 21, 2012, Plaintiff's driver's license was "ordered restored pending a future appearance in Seaside Park Municipal Court regarding driving while suspended." (*Id.* ¶ 98.) Plaintiff received many summonses to appear and ultimately, in November 2013, "a warrant was issued for his arrest for his failure to appear in Seaside Park Municipal Court." (*Id.* ¶ 101.) On November 29, 2013, "[w]hile en route to his place of employment," Plaintiff was stopped by Defendant Brady. (*Id.* ¶ 102.) At the time of the stop, "a large (5 feet by 8 feet) sign was attached to Plaintiff's truck that stated *Seaside Park COP M. Brady commits perjury with intent to imprison whistle blower for ten years.*" (*Id.* ¶¶ 102–03.) Plaintiff was charged with "third degree eluding on

or about 29 November 2013, given a $10,000 bail, and transported to the Ocean County Correctional Facility." (*Id.* ¶ 105.) In March 2014, following an appearance in Seaside Park Municipal Court, Plaintiff was found guilty of driving with a suspended license. (*Id.* ¶ 114.) Thereafter, "in consideration of the demonstrable and pervasive corruption of the state judicial system," Plaintiff "continued to drive," and on March 11, 2014, Plaintiff was arrested by Defendant Quintero for driving with a suspended license. (*Id.* ¶ 121.) On May 7, 2014, Plaintiff was "driving within Seaside Park with a reinstated driving license," was subsequently arrested by Defendant Bonner, and charged with contempt of court for driving with a suspended license. (*Id.* ¶ 129.)

In essence, Plaintiff alleges the Seaside Park Municipal Code violations were an attempt to suppress his right to free speech and that his arrests were an attempt to retaliate against him for exercising that right. (*See id.* at 13.) He further alleges Defendant Bonner knowingly submitted a false report resulting in his psychiatric detention—an effort to suppress his right to free speech. (*Id.* at 25.)

On July 9, 2014, Plaintiff filed his initial complaint against Defendants in the District of New Jersey. (Case No. 3:14-cv-04310-PGS-TJB, ECF No. 1.) On March 27, 2015, following oral argument on Defendants' motions to dismiss (Case No. 3:14-cv-04310-PGS-TJB, ECF Nos. 3–4), Judge Sheridan granted Defendants' motions to dismiss and dismissed Plaintiff's complaint for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6) ("March 27, 2015 Order"). (Case No. 3:14-cv-04310-PGS-TJB, ECF No. 17.) On April 22, 2015, Plaintiff appealed the March 27, 2015 Order. (Case No. 3:14-cv-04310-PGS-TJB, ECF No. 20.)[4] On June

---

[4] On April 10, 2015, Plaintiff wrote an 11-page letter with attachments to Judge Sheridan stating, among other things, "you are indeed a corrupt judge and a malicious liar . . . . I will appeal your decision to the third circuit of appeals in part because the lies, omissions, and distortions that

22, 2016, the Third Circuit affirmed in part and vacated in part the March 27, 2015 Order. (Case No. 3:14-cv-04310-PGS-TJB, ECF No. 22.) Specifically, the Third Circuit affirmed Judge Sheridan's dismissal of the claims against the individual Defendants and remanded for further consideration of Plaintiff's First Amendment challenge to Seaside Park Municipal Code § 25-624E. (Case No. 3:14-cv-04310-PGS-TJB, ECF No. 22-2 at 5–6.)

On June 29, 2016, following the Third Circuit's ruling, Judge Sheridan reopened the matter for further proceeding. (Case No. 3:14-cv-04310-PGS-TJB, ECF No. 23.) On July 8, 2016, Judge Sheridan received "Plaintiff's Response to Notification of Reopening." (Case No. 3:14-cv-04310-PGS-TJB, ECF No. 25.) According to same, Plaintiff stated he "received on 5 July 2016 a copy of an order signed by you dated 28 June 2016 that reopens presumably only a minor and insignificant part of my litigation that you completely dismissed." (*Id.* at 3.) Plaintiff continued: "This case will only be reopened upon your indictment and the indictment of numerous members of the Third Circuit Court of Appeals pursuant to 18[ ]USC[ ]§ 242; convictions will easily follow based upon the brazen cover up of relevant evidence." (*Id.*) On September 19, 2016, Judge Sheridan filed a Letter Order clarifying the matter had been reopened and directed Plaintiff "to file an Amended Complaint regarding the 'as applied' First Amendment claim that survived the Third Circuit's appellate review." (Case No. 3:14-cv-04310-PGS-TJB, ECF No. 29 at 2.) The Letter Order further stated, "Plaintiff is directed to file his Amended Complaint by **October 17, 2016,**" and that "Plaintiff is cautioned that if he does not timely file an Amended Complaint that complies with the terms of this Letter Order, his remaining 'as applied' First Amendment claim may be dismissed with prejudice." (*Id.* at 3).

---

characterize your written opinion reinforce my belief in the strength of my case." (Case No. 3:14-cv-04310-PGS-TJB, ECF No. 19.)

On October 21, 2016, Magistrate Judge Bongiovanni entered a Letter Order to Show Cause ("OTSC Letter"), which stated, despite Judge Sheridan's prior Letter Order, Plaintiff had neither filed the requisite Amended Complaint before the October 17, 2016 deadline nor had Plaintiff provided Judge Sheridan with any reason justifying his failure to do so. (Case No. 3:14-cv-04310-PGS-TJB, ECF No. 30.) Specifically, the OTSC Letter provided: "His decision not to do so rests solely with himself and he has provided the Court with no reason justifying his failure to act." (*Id.* at 1.) As a result, the OTSC Letter directed Plaintiff to appear in person on November 17, 2016 at 2:30 p.m. "to show cause why this case should not be dismissed with prejudice based on his failure to comply with this Court's Order and prosecute this matter." (*Id.* at 2.) The OTSC Letter also directed Plaintiff to file "a written position statement explaining why he has failed to comply with this Court's Order and prosecute this matter, and why this case should not be dismissed with prejudice." (*Id.*)

On November 4, 2016, Plaintiff filed a response to the OTSC Letter ("Plaintiff's OTSC Response"). (Case No. 3:14-cv-04310-PGS-TJB, ECF No. 32.) In Plaintiff's OTSC Response, Plaintiff posited theories of "near complete corruption of the federal government" and attempted to explain why his "contempt for the state and federal judiciary is well founded." (*Id.* at 2.)[5] Plaintiff acknowledged the Letter Order directing him to file an Amended Complaint, as well as his refusal to comply with the Letter Order:

> Since the purpose of the 17 November hearing is to explain my failure to file an amended complaint I will necessarily demonstrate that Peter Sheridan is a liar, a corrupt judge, and an unindicted felon regarding the violation of 18[]USC[]§[]242; I did not file an amended complaint because of my belief that the New Jersey District Court is completely corrupt. I will also demonstrate with

---

[5] Plaintiff further added he wanted his case "completely re-instated negating the ruling of a demonstrably corrupt Sheridan and a demonstrably corrupt Third Circuit Court of Appeals." (*Id.*)

7

> supporting evidence that virtually the entire Third Circuit is made up of unindicted felons regarding the cover up of relevant evidence.

(*Id.* at 5.) Also included in Plaintiff's OTSC Response were three attachments including copies of (1) a letter from Plaintiff to Judge Sheridan from April 2015; (2) an October 21, 2016 letter from Plaintiff to several non-party individuals; and (3) Plaintiff's request for an *en banc* hearing before the Third Circuit. (*Id.* at 7–14, 15–20, 21–35.)

On November 17, 2016, at the OTSC Hearing before Judge Bongiovanni, the court explained to Plaintiff that the hearing was scheduled to advise Plaintiff that he "would be in jeopardy of having [his] case dismissed in its entirety because [he] hadn't done what [he had] been instructed to do." (Case No. 3:14-cv-04310-PGS-TJB, ECF No. 34 at 2.) The court also noted that it had given Plaintiff "the opportunity to file an amended complaint," and "that didn't happen." (*Id.* at 2.) Indeed, the court explained:

> I know you sent in a detailed submission. Frankly, I'm not quite sure what your intention was, but let me just step back a moment and tell you the landscape from how I see the case. First of all, your case had been reopened after the mandate came down from the Court of Appeals. The Court of Appeals had affirmed some of what Judge Sheridan had decided, and this is memorialized in more detail in my September 19th letter to you. But what we saw when the case came back is that we need a complaint; we need one pleading. And if we don't have a pleading in this case, you can't go forward.

(*Id.* at 2–3.) The court went on to further clarify to Plaintiff why he must file an Amended Complaint:

> [I]f you're not going to [file an Amended Complaint], that's fine, you don't have to, but your case could get dismissed. And I just wanted to make sure that you understood that there is a requirement that in every case we have a complaint. And the Court of Appeals' decision had changed the parameters of what your complaint could look like so that's where we are. Any questions, issues, Mr. Miller?

8

(*Id.* at 3). Plaintiff responded: "Don't tell me you don't understand my case. Don't tell me that you don't understand that the Federal Circuit Court of Appeals covered up evidence of police perjury . . . . Now I wasted my time coming here today, ma'am. I don't care what you do with my case." (*Id.*) Plaintiff repeated his ambivalent sentiment surrounding the possibility of dismissal of his case several more times throughout the OTSC Hearing (*id.* at 5 ("I don't care – I don't care if you . . . dismiss my complaint, okay? I thought I made myself clear in that letter.")) and ultimately told the court "[y]ou can dismiss my case . . . . You know, forget it." (*Id.* at 7.)[6]

On January 27, 2017, following the OTSC Letter and OTSC Hearing, Judge Bongiovanni *sua sponte* entered a report and recommendation ("Report and Recommendation") that Plaintiff's complaint be dismissed with prejudice. (Case No. 3:14-cv-04310-PGS-TJB, ECF No. 35.) Judge Bongiovanni, applying the factors set forth in *Poulis v. State Farm Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984) for whether to impose an involuntary order of dismissal with prejudice, found the *Poulis* factors supported the dismissal of Plaintiff's claims with prejudice. (*Id.* at 4–5.) On February 27, 2017, after first noting the parties' failure to file and serve objection to the Report and Recommendation within the given fourteen day period and reviewing the Report and Recommendation *de novo*, Judge Sheridan adopted the Report and Recommendation ("Sheridan Order") thereby dismissing Plaintiff's complaint "with prejudice for Plaintiff's non-compliance with his obligations under the Federal Rules of Civil Procedure and failure to prosecute this matter." (Case No. 3:14-cv-04310-PGS-TJB, ECF No. 36 at 1.)

---

[6] Further, Plaintiff repeatedly made statements during the OTSC Hearing concerning his lack of trust and overall disdain for the federal courts, including "I don't trust you, or any judge in this courthouse;" "Peter Sheridan and [] the Third Circuit Court of Appeals . . . actually covered up that police perjury that was demonstrable;" and "you have to be a moron not to see their corruption and covering up their evidence." (*Id.* at 3–4, 6.)

9

On May 14, 2020, Plaintiff filed the Complaint in the Southern District of New York and the District of New Jersey against Defendants alleging violations of Plaintiff's First Amendment right to speech pursuant to 42 U.S.C. § 1983. (ECF No. 1 at 13.) On October 9, 2020, Defendants filed a Motion to Dismiss Plaintiff's Complaint with prejudice. (ECF No. 13.) On October 13, 2020, Plaintiff filed an Opposition. (ECF No. 14.) On October 13, 2020, Defendants filed a one-page Reply acknowledging receipt of Plaintiff's Opposition and asserting "Defendants are unable to discern any part of the Opposition that responds to the points raised in the original Brief. (ECF No. 15.) Defendants rely on the points made in the original Brief in support of the Motion in Reply to Plaintiff's most recent submission." (*Id*.)Thereafter, Plaintiff filed two additional responses to Defendants' Reply. (*See* ECF Nos. 16–17.) On October 21, 2020, the Court filed a text order acknowledging receipt of Plaintiff's responses to Defendants' Reply, indicated it would consider them even though they were "unauthorized sur-replies," and ordered "[n]o further briefing" on the Motion to Dismiss. (ECF No. 18.)[7]

## II.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more

---

[7] The Court also notes Plaintiff filed several letters (*see* ECF Nos. 19–43), despite the Court's prohibition from doing so, seeking, among other things, acknowledgment of the alleged "2nd degree eluding," criminal referral to "Justice Samuel Alito regarding deliberate wrong doing by multiple federal judges," reassignment of this matter "to a judge other than Martinotti or Sheridan," and requests for status of the litigation.

than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy*

11

*Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6). The Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

### III. DECISION

Defendants argue Plaintiff's Complaint should be dismissed because, *inter alia*, (1) Plaintiff's Complaint fails to state a claim for relief pursuant to 12(b)(6); and (2) Plaintiff is barred from re-litigating claims that have already been adjudicated pursuant to *res judicata* or the claim preclusion doctrine. (ECF No. 13 at 7, 10.) Indeed, Defendants argue "Plaintiff's Complaint raises no new allegations. These allegations were raised and disposed of in Case No. 3:14-cv-04310-PGS-TJB. That case was over in 2017 after the time to appeal the dismissal expired." (*Id.* at 10.) Plaintiff responds, more or less, incoherently, "[t]he alleged 2nd degree eluding in this matter was criminally covered up by multiple federal judges including New Jersey District Court judge Peter Sheridan and the entire 3rd Circuit Court of Appeals" and "defendants made no attempts to argue against the relevance of the alleged 2nd degree eluding and instead made no mention whatsoever of it in their motion to dismiss." (ECF No. 14 at 6, 8.)

The Court agrees with Defendants that Plaintiff is barred from bringing the Complaint against Defendants. Plaintiff has filed near identical claims against Defendants in this District

before. (*Compare* 3:14-cv-04310-PGS-TJB, ECF. No. 1, *with* 3:20-cv-09420-BRM-LHG, ECF No. 1.) Indeed, in the prior action, following Judge Sheridan's March 27, 2015 Order granting Defendants' motions to dismiss and the Third Circuit's appellate review remanding for further consideration Plaintiff's First Amendment challenge to Seaside Park Municipal Code § 25-624E, Plaintiff deliberately failed to follow court orders despite ample opportunity to do so. Specifically, Plaintiff failed to comply with the Letter Order and the OTSC Letter, both of which required Plaintiff to file an Amended Complaint. Thereafter, at the OTSC Hearing, Plaintiff failed to explain why he did not file an Amended Complaint and instead expressed disdain towards the court and ultimately told the court to dismiss his case. (*See generally* Case No. 3:14-cv-04310-PGS-TJB, ECF No. 33.) Pursuant to the Sheridan Order, Plaintiff's complaint was dismissed with prejudice and the case was terminated. (Case No. 3:14-cv-04310-PGS-TJB, ECF No. 36.)

The Court finds Plaintiff's current Complaint – and second attempt to prosecute his claims against Defendants – barred by the doctrine of *res judicata* or claim preclusion. Claim preclusion applies "when there is a final judgment on the merits involving the same parties or their privies and a subsequent suit based upon the same causes of action," *Byrd v. City of Philadelphia*, 245 Fed. App'x 208, 210 (3d Cir. 2007) (citing *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984) ("Rather than resting on the specific legal theory invoked, *res judicata* generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims.")); *Caldwell v. Cumberland Cnty. Coll.*, Civ. A. No. 08-4382, 2010 WL 398447, at *1 (D.N.J. Jan. 28, 2010). The Court finds Plaintiff's Complaint advances legal claims and theories stemming from the sign affixed to his truck (and the subsequent summonses and arrests that ensued), which is the identical factual predicate for his prior action. Judge Sheridan already dismissed with prejudice Plaintiff's prior complaint and that dismissal constitutes a final judgment

on the merits. *See* Fed. R. Civ. P. 41(b) (stating that other than a dismissal for lack of jurisdiction, improper venue, or failure to join a party, a dismissal—either involuntary or by motion—operates as an adjudication on the merits). Therefore, the Court finds that as of February 27, 2017 – the date of the Sheridan Order adopting the Report and Recommendation – Plaintiff's claims against Defendants were forever barred. *Papera v. Pa. Quarried Bluestone Co.*, 948 F.3d 607, 611 (3d Cir. 2020) (providing that "[a] dismissal with prejudice 'operates as an adjudication on the merits,' so it ordinarily precludes future claims"); *Landon v. Hunt*, 977 F.2d 829, 832–33 (3d Cir. 1992); *accord Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327 (1955).

Accordingly, Defendants' Motion to Dismiss is **GRANTED**.

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** and Plaintiff's Complaint is **DISMISSED with PREJUDICE**. An appropriate order follows.

Dated: May 27, 2021

*/s/ Brian R. Martinotti*
**BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**